Good morning. Good morning. Good morning. Are you Mr. Seymour? No, I'm Alex Green for the petitioner. Oh, I beg your pardon. Oh, you're Ms. Seymour. Sorry about that. I just want to make sure that you can hear us okay before we begin? Yeah, how do I sound? You sound great. Just fine on our end. Thank you. We're ready to hear argument whenever you are ready. Okay. Good morning and may it please the court. My name is Alex Green. I am attorney for petitioner Lopez-Rodriguez. So this case concerns an application for asylum, withholding of removal and protection under the Convention Against Torture. I'm sure the panel has thoroughly Petitioner is a young man from Guatemala who helped his mother run a small business. He was beaten twice, threatened by gang members who were trying to recruit him, extort him, and also demanded that he give up information about other business owners. Specifically, the gang wanted the names and addresses of the business owners who helped supply petitioner's business with clothes and other merchandise. So after beating him twice and petitioner attempted to flee to a different city, he eventually came to the United States and applied for asylum. So in this case, the agency found that petitioner did suffer past harm that rises to the level of past persecution. However, the agency found that petitioner failed to connect that harm to a cognizable protected ground. So on appeal, petitioner raises one protected ground, and that is his membership in a particular social group. And that group is defined as young male business owners who are targeted for gang membership, based on the gang wanting the resources and connections that the business owner has access to, and who refused to join that game. So admittedly, that group is a bit long winded. So I want to turn to the government's arguments that the group is not cognizable and that there is no nexus. So unless there's any specific questions, I'll just start with the issue of it being impermissibly defined by the persecution. So the government states that this group, the definition of this group as articulated, includes the harm and is impermissibly defined. We would argue that even without the impermissible aspects of this group, the gang recruitment, refusing gang recruitment, that this group remains cognizable. So even with the impermissible parts struck out, this group is cognizable. So another question might be... I'm confused. You're now talking about a different group. So what's the different group? Right. So the question is, why would you consider on appeal a group that was not raised at trial? Well, first I'd like to hear what you would say the group is, what you're striking. And then yes, that's the next question. Right. So the group would essentially just be business owners, young male business owners who are targeted for their resources, or sorry, young business owners who have resources and connections to other business owners. That would be the group. So just striking out the attempted gang recruitment and refusal to join the gang. How does that revised articulation of the group qualify? So I would argue that it's immutable, socially distinct, and particular. So just beginning with immutability, I think the strongest argument for that is in Macedo-Templos v. Wilkinson, the concurrence by Judge Bia. It explains that business ownership, entrepreneurship is a very personal endeavor, more so than simply being an employee like in Acosta. So starting a business, creating it... So even the way you've now defined the group, it's smaller than that, and its cognizability seems fairly to me. It's not the test, but if you ask somebody at random, is this person a member of that group? It's very unlikely that they're going to say yes. So could you speak to social distinction, please? Right. So I would emphasize Henriquez-Rivas v. Holder and Cordoba, which state that society at large is just one perspective from which to view social distinction and particularity. We can also look to the perspective of the persecutors. And in this case, the credible testimony, the letters written by friends and family show that the persecutors certainly saw business owners as a unique target. In fact, they saw business owners as sort of a network amongst each other. They would target one business owner and demand the information and identity of the next business owner and the next business owner. So certainly from the perspective of the persecutors, which is one perspective that you can establish social distinction or particularity, the persecutors in this case saw business owners as a uniquely valuable target separate from the general population. Council, we rejected a business owner, a particularized social group in Macedo-Templos. How do you get around that precedent? So I would again just turn to Henriquez-Rivas that Macedo-Templos was cited Mexican society as a whole. And so I would look to that's just like I said, one perspective, Mexican society as a whole, whether Mexican society views business ownership as a particular, as socially distinct. So I would say, excuse me, within that community, but your reference to Mexico confuses me a little bit because that's a different case in response to Judge Forrest. And when we're talking about the community, we need to talk about the community where our petitioner resides. And this person is from Guatemala, right? Right, right. I believe that Macedo-Templos was about Mexican society though. I might be incorrect on that one. No, but I think that's exactly the point that I'm making. They're from two different places. Right, exactly. I totally agree. So that would be the first distinction between our case and is that they're different countries. But could you get back to Judge Forrest's point though? I mean, I'm still struggling with why would this, you know, business owners would, whether in Mexico or Guatemala, would qualify as socially distinct. Is there evidence of that in the record? The main evidence is just that the persecutors themselves view the group as socially distinct. They routinely target business owners. This is from statements written by respondents' family and then the credible testimony as well as a local government official, the equivalent essentially of a city council member, wrote a statement as well saying that the cartels do target businesses for extortion. How would we jive that argument with our precedent that, you know, generalized crime is not a basis for seeking immigration relief? I mean, as a logical matter, of course people who own businesses get targeted because they're going to be perceived to be good targets for theft and other, particularly other financial crimes. So how do we make your argument square with what our precedent is? I would say that the targeting that business owners like petitioners suffer, especially in this case, is above what the general public experiences because it wasn't not just about money. It wasn't just about extorting wealth. It was about extorting information, information about other business owners, getting the connections and identities and addresses of other business owners. So that for us is what makes it separate from the general crime that the rest of the population experiences. So did you want to leave some time for rebuttal? Um, sure. Yeah, I would like to. That's certainly allowed. We'll hear from Government Council, please. May it please the court. Nell Seymour on behalf of the Attorney General. Here, petitioner's claim is foreclosed by precedent. And as we've already discussed, although he attempts to recast a common anti-gang claim around the specific harm he suffered, he fails to establish that his proposed group meets any of the established criteria for a group to be legally cognizable. What precedent exactly are you relying on? Predominantly Ochoa and Macedo-Templos. The business owner groups have been considered and rejected along with the large amount of case law talking about resistance to general recruitment or generalized violence, not establishing a nexus to a protected ground. And here, petitioner's group is impermissibly defined by the harm he suffered or fears. And even if, as opposing counsel suggested, if we were to take that out, the agency did still do its due diligence. Tell me exactly why it's defined by the harm suffered. In what way? Because, Your Honor, it makes reference to the retaliation for his refusal to join the gang. That's not the harm suffered. That's the motive, but it's not the harm suffered. Correct. But if without that, it does mention the harm. And although... There's nothing wrong with mentioning the harm. We said that in Dias Renoso. Correct. Okay. That doesn't disqualify somebody just because they mentioned the harm. We've said that at length, right? Yes, Your Honor. Okay. So take another run at your answer to this question, please, so I can understand your position. Sure. So the government's position would be that not only does it mention the harm and therefore it cannot be defined without the mention to the harm, but more than that, the agency went beyond that to go through each of the other elements and establish that he didn't meet any of those elements either. Okay. So what's your strongest other element? Because you only need to defeat one. What's your strongest argument on this point? That would be immutability, Your Honor. The government's position is that being a business owner is neither fundamental to petitioner's identity, nor is it something that he cannot or should not be required to change, which is... But it could be in some societies. I mean, take communist China, for example, under the Cultural Revolution. People whose family had been business owners were here. However, Your Honor, he is not a business owner in the United States. So on the facts and circumstances of this case... I don't understand what difference that makes. Because he was able to change that. He is not a business owner and it is no longer... So in other words, you're speaking to immutability, not social distinction. And I think we're getting these conflated here. So can you back up? Are you speaking to him not satisfying immutability or Judge Berzon's point of social distinction? I don't know which point you're making. The position would be that he doesn't establish either immutability or social distinction. But on the mutable characteristic front, being a business owner, unlike something like being a nurse where that specialized degree cannot be changed and should not... I thought that the immutability standard included a standard for not things that couldn't be changed, but that you should have to change. That is true, Your Honor. And being a business owner is not... So you're arguing that business ownership in general can't be a particular social group? I'm arguing that in this case, being a business owner in Guatemalan society is not an immutable characteristic. I won't presume to talk about the world at large. The way you're talking about it, you seem to be talking about it in generic terms. I apologize, Your Honor. In this case, on this record, being a business owner is not immutable characteristic for this petitioner based on the way he defined his particular social group and in society. And for the social distinction part, I would like to address the opposing counsel's point that the gang's perception can establish whether or not the group is socially distinct. And that is untrue, Your Honor. Although it is relevant whether or not the gang sees this individual as a target, what really matters is whether society would view this group as distinct or a discrete group within society, or that it would be set apart in some significant way. And here, there is no evidence that society in general would regard this as a group that would be socially distinct or even particularized because the group that he has defined is not clearly defined and there are no commonly accepted definitions of the group or attributes that would establish that the group was sufficiently particular. Let me change the subject for a minute to the Catt claim. Sure, Your Honor. I'm wondering whether the holdings as to acquiescence was adequate, given the fact that there is extensive country of conditions material in the record regarding the fact that the police in Guatemala are, in fact, somewhat in cahoots with the gangs. And it wasn't, nothing about that was mentioned in the IJ or BIA opinion. Yes, Your Honor. So here, the agency does not need to address every part of the record in order for there to be a presumption that it was considered. So the government's position would be that the in the record to suggest that there may be difficulties with the Guatemalan government combating the gangs or that there is an issue of corruption. The standard is whether or not there's significant evidence establishing government complicity. And what if we think there's significant evidence? What if we think there is? Then what in response to Judge Berzon's question? If this court were to find that there are significant evidence establishing government complicity, the petitioner would still be required to show the clear probability of future torture based on an individualized risk. And that is also absent from the record. Although he says, he speculates that he would be targeted were he to return, the evidence doesn't support that. So he would still fail to meet his burden to establish his eligibility. But the BIA's determination was only on the acquiescence ground, wasn't it?  Only on the acquiescence ground. Well, the BIA adopted and affirmed the immigration judge's decision, Your Honor, which discusses the speculative nature of his claim. But yes, given that the board added additional analysis to the immigration judge's order and focus on acquiescence, that is the crux of the board's decision here. Judge Forrest, do you have a question? I'm stuck on the procedural point. It's true that the agency doesn't have to recite all the evidence that it considered, but the agency's decision does need to let us know that it considered the full record. In some manner, whether it recites that or whether it makes other reference to make clear that it was considering all the evidence of record. And if it doesn't do that, that's reversible error. So here, what I'm struggling with in the BIA's decision is what indicates to me that it actually considered the country evidence. I'm missing it. Yes, Your Honor. That would be its reliance on the immigration judge's decision, which is more thorough in the consideration of the record. And the government would also point to the consideration of the social group claim, which took into account the evidence of Guatemala in general. Although it's not reiterated within the CAT analysis, it is still evident from the record, sorry, evident from the decision that the record as a whole was considered when it reached its decision. Can you tell me where, I'm looking at the IJ's CAT analysis, which is also just one paragraph, and it also is completely limited to the acquiescence issue, and it doesn't say anything about the contra condition. So where do you think it was more complete? If you permit me to grab the record, Your Honor, it's back up there. I'm sorry? May I grab the record? Sure, go ahead. I'm not wishing to waste the Court's time while I try it. Page six, page 85 of the administrative record, page six of the IJ opinion. C, protection under the Convention Against Torture. Thank you, Your Honor. You might have it as ER 71. I found it. Thank you, Your Honor. So, yes, although that particular paragraph is on the shorter side, the government would contend that the preceding part of the decision, where it goes through everything that was contained within the record, shows an adequate consideration of the record, although they do not... My recollection of that, in the summary of the evidence, we don't have, or the summary of the record, there is no specific call-out to the country conditions. That may be true, Your Honor. I do not, I'm unable to provide specific citations where... So, if we conclude that we can't find indication in the IJ's decision or the BIA's decision that they actually looked at the full record with regard to country conditions, are we required to remand? Were this Court to find that a more thorough analysis of the country conditions evidence was necessary in order to deny CAT, then remand would be appropriate. But the government would contend that even without that specific reference to the country conditions evidence, Petitioner still fails to meet his burden, because he didn't show a particularized risk of torture. But really, there is no such conclusion in either the IJ or the BIA opinion. Could I just piggyback on that? On the BIA, on page two, I think you're relying on this. I want to make sure that I understand your argument. The BIA has one paragraph about CAT that says the record evidence does not support the conclusion that is more likely than not. Do you have to rope everything into that? No, Your Honor. I think it is the citation to the regulation and also the case that it cites to show that speculative claims are insufficient. Okay. So, I didn't ask a good question, but I'm trying to follow up on my colleague's point, because I'm also troubled that there isn't anything that really tells me the country in response to Judge, well, I don't know which one of my colleagues raised the issue, but it doesn't matter. I think your point is that you're relying on the BIA having incorporated, you know, Burbano, the IJs, right? And so, I don't see a whole lot in the IJs hidden, and we've just reviewed that paragraph. And now I'm looking at ER4, and I think you do have to rope everything in the BIA that says the record evidence does not support the conclusion that. Unless there's something else. That's all I see. It would be that, Your Honor, and the presumption that the record as a whole was considered, given that the agency doesn't have to address all of it. Does that change? Do those general principles change when the country conditions are as central as they are here? No. That is the. Okay. Is there anything? We've taken over your time. Is there anything further from my colleague's judgment? No, that's fine. All right. Thank you. Thank you, Your Honors. So, you have two minutes left. Okay. So, I would just like to begin with immutability. Once again, our position is that being a business owner can be an immutable characteristic, specifically because it's so attached to one's identity that one should not be expected to change it. So, even though, you know, the petitioner is not a business owner anymore, he should not have been expected to forego his family business, which is the second point. The sense of identity is even stronger because not only was it a business he helped start, but it was almost something of a family inheritance. His mother operated the business. He worked as a manager and presumably would have also ran the business afterwards. So, it is a family business. The other case I would like to distinguish is Ochoa. In that case, this relates more to Nexus. In that case, the business owner actually entered into a private loan with a lender. He was unable to repay that loan and the lender used that non-payment as pressure to try and coerce the business owner into committing crimes on their behalf. So, in that case, the court found that the Nexus between the harm was much more likely this private agreement between the business owner. In our case, to understand the motives behind our client's persecutors, we have to look at what they wanted from him. And what they wanted was those business connections, the names and addresses and identities of other business owners in the community. And that also just reinforces the notion that the persecutors, who are part of the society as a whole, it is true that the society as a whole needs to be accounted for. But the persecutors saw business owners as a small group and as a network. That's my time. It is. Thank you both for your arguments. We appreciate it very much. We will take this case under advisement and move on to the next case on the calendar.
judges: BERZON, CHRISTEN, FORREST